Peter A. Quinn, J.
This is a motion by the defendant Waterfront Commission of New York Harbor for summary judgment dismissing the complaint on the merits. There are only two remaining litigable causes of action before the court on this *283 motion. The first seeks a permanent injunction restraining the defendant from permitting unlicensed and unregistered persons to perform the work of longshoremen (in derogation of the express provisions of the statute) for which all of the members of plaintiffs’ union are licensed and registered and exclusively entitled to qualify under collective bargaining agreements. The second cause of action seeks a declaratory judgment nullifying a regulation adopted by the Waterfront Commission which would permit carriers of freight by water to assign unlicensed and unregistered personnel to the performance of longshoremen’s work in the event of special or emergency needs to protect the public health or safety on prior approval by the commission.
It is not disputed that between March 1, 1954 and November 25, 1960 there were six occasions when unlicensed, unregistered personnel of carriers of freight by water performed longshoremen’s work in moving the baggage of disembarking passengers from ship to shore. On all of these occasions, the plaintiffs claim, a labor dispute and strike were in progress. The defendant does not deny this except it prefers to characterize these interludes as work-stoppages. The plaintiffs say that the use of unauthorized personnel to perform the tasks for which plaintiffs alone, by law and by contract, are eligible and fitted not only resulted in the loss of this work with its concomitant earnings but prolonged the labor disputes and strikes, in the course of which such use occurred and by rendering less effective the economic force exerted by the strike and the picket line, served as a strike-breaking device. The defendant contends that up until April, 1960 it never on any of the occasions mentioned expressly approved or permitted the use of nonregistered personnel, but, because of the insistence of shipowners that the baggage of disembarking passengers had to be unloaded somehow, and the equal insistence of the plaintiff union that baggage should not be treated differently from any other water-borne freight, the commission did not interfere but let events take their own course; except on one occasion in October, 1959 when the commission, invoking the power conferred by statute, commenced an action to restrain three shipowners from using non-registered personnel. This suit came to naught when the longshoremen went back to work after eight days.
The commission on April 19, 1960 adopted a regulation purporting to give legal sanction to the use of unregistered personnel in the performance of longshoremen’s work under emergency conditions and after prior approval by the commission. This regulation was supplemented by instructions detailing *284 the necessary steps to be followed by employers in order to obtain commission approval.
The question is whether or not the regulation is so broad in scope and lacking in needful safeguards as to violate the letter and spirit of the interstate compact and Waterfront Commission Act and whether or not it constitutes an unreasonable, arbitrary and capricious exercise of authority to the forseeable irreparable damage of plaintiffs in loss of earning opportunities and impairment of the effectiveness of the strike and picket line as rightful means of economic pressure in the struggle of employees to maintain a favorable bargaining position with employers on questions of wages, hours and conditions of labor.
The Waterfront Commission was created in the public interest to counteract a train of evils which were found to follow the loose unregulated hiring practices which obtained on the waterfront in the employment of labor.
A prime means adopted in aid of that purpose was the statutory requirement for individual registration of longshoremen with the commission and the flat legislative fiat that none but registered longshoremen could move water-borne freight and no one could employ for such work any but registered longshoremen.
The commission has power under the statute to make and enforce such rules and regulations as it may deem necessary to effectuate the purposes and prevent circumvention or evasion of the act. The plaintiffs question whether this delegation of the power to legislate embraces the enactment of an emergency regulation running directly counter to the express provisions of the statute and whether any but the Legislature could provide for such exception even in case of emergency.
The commission, no doubt balancing rights and conveniences and apprehensible harms, deems it necessary in the public interest to recognize an exception to the seemingly unbending requirement of the statute which excludes all but registered persons from longshoremen’s work. Acting with the wisdom born of its experience in the administration and enforcement of the Waterfront Commission Act, the commission by its regulation provided, in its discretion, for a relaxation of the rigid exclusionary provisions of the act in the event of special or emergency needs to protect the public health or safety. Plaintiffs question not only the rightness of that wisdom and exercise of discretion but challenge in point of fact the verity of the experience upon which it is based as well as the postulate of public necessity.
*285 Thus, the demonstrable need for this regulation; the reasonableness of its terms, e.g., the omission of any provision for notice to plaintiffs of an application under the regulation, with suitable opportunity for plaintiffs to act first in an emergency; the reality and incidence or likelihood of the dangers to public health and safety it seeks to prevent or ameliorate; the actuality and extent of harm to the livelihood and collective bargaining rights of organized, registered longshoremen which this exception may resurrect from the evils presumably slain by the statute — these, among other things, are the considerations upon which depend the plaintiffs’ prayer for an injunction restraining any use of the regulation and a declaratory judgment voiding it.
These considerations are so bound up in the interplay of persons and events along the New York waterfront since 1953, in which plaintiffs and defendant and shippers, stevedores and shipowners and the public have each had a part with the role of protagonist shifting from one to the other with changing circumstances; and this history is a matter of such factual controversy on this motion that the total question cannot be readily and satisfactorily resolved on affidavits.
Disputed questions of fact, touching the powers of the commission and the reasonable exercise thereof, are so interwined in a complex of the rights of labor vis-a-vis the public necessity and convenience and the rights of employers, that the proper disposition of these actions deserves and needs the broader, more searching process of a trial. This will more surely discover the true and relevant circumstances which make up the background of controlling experience. This will make more certain a fair and perceptive decree by a fully informed court of equity.
The contention of defendant that plaintiffs, constituting an unincorporated association, do not show the requisite common interest of all members in the causes of action and the relief sought, is rejected. If the decision on the prior motion addressed to the sufficiency of the complaint, in which three accompanying causes of action were dismissed or stayed, is not the law of the case on this subject, then it would nevertheless appear that the regulation complained of, which is at the heart of the matter, sufficiently relates to the degree of effectiveness of the future exercise of the right to strike (a right common to all) to involve and affect the interest of each member within the meaning of section 12 of the General Associations Law. The motion for summary judgment is denied.